**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

IN THE MATTER OF THE ARREST OF

KYON WATSON

Case No. 3:21-mj-00231-DMS

**AFFIDAVIT IN SUPPORT OF AN APPLICATION
FOR A CRIMINAL COMPLAINT**

I, Thomas J. King, being duly sworn, depose and state that:

## I. EXPERIENCE OF AFFIANT

I am a graduate of Buffalo State College, where I obtained a Bachelor of Science in criminal justice. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Department of Justice, and have been so employed since February 14, 2001. Prior to that, I was a Special Agent with the Immigration and Naturalization Service for five years and an Inspector with the United States Customs Service for three years.

I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. As a result of my training and experience as an ATF Special Agent, I am familiar with the federal firearms laws. Through my experience, I have also investigated numerous cases involving 18 USC section 922(g)(1), Felon in Possession of a Firearm, 18 USC § 924(c), Using or Carrying a Firearm in Relation to a Crime Involving Drug Trafficking or Possession of a

APR 1 9 2021

Firearm in Furtherance of a Drug Trafficking Crime, and 21 USC §§ 841 et seq., Controlled Substance violations.

**II.   PURPOSE OF AFFIDAVIT**

Based on the facts set forth in this affidavit, there is probable cause to believe that Kyon WATSON has committed violations of the Controlled Substances Act, 21 USC Section 841 et seq.

**III.   PROBABLE CAUSE**

1.   I initiated an investigation into an individual on January 11, 2021. I met the individual while acting as an Undercover Agent (UCA) and began purchasing narcotics from him.

2.   On January 27, 2021, I made arrangements to purchase two ounces of methamphetamine. The individual indicated that he had one ounce on his person but needed his source of supply to meet him so he could have a total of two ounces. I agreed to meet the individual later that day and purchase the two ounces of methamphetamine from him.

3.   When I met him, he sold me one ounce of methamphetamine. He said that he could sell me the other ounce once his source arrived with more methamphetamine. While we waited for his source to arrive, he showed me a Trailblazer Firearms, model Lifecard, .22 WMR caliber single shot pistol. He would not sell the firearm and indicated he kept it on his person and did not want to get rid of it. He received a text and indicated that his source had arrived. Before he left my vehicle to go meet his source, he left the firearm with me to look

at. I was able to photograph the firearm, verify the serial number, and verify that in fact there was live ammunition with the firearm.

4. Meanwhile, ATF surveillance had observed a GMC pickup truck bearing AK LP GZB432 had arrived, and parked near where I was parked, waiting with the individual. When he told me his source had arrived, surveillance observed him walk from my vehicle, to the GMC pickup, and get in. After several minutes, he returned to my vehicle, secured his firearm, and then proceeded to sell me a second ounce of methamphetamine. The entire encounter with the individual was audio and video recorded, and monitored by the ATF surveillance team. I departed the area after the transaction was complete. I later field tested both packages of the suspected methamphetamine I had purchased from him, and obtained a presumptive positive result for methamphetamine.

5. ATF Agents observed that after he exited my vehicle, he returned to the GMC pickup. After a few moments, he exited the vehicle and departed the area. ATF surveillance continued on the vehicle, which eventually stopped at an address that ATF Investigative Assistant Bill Tunilla was able to link to Delshawn WREN, through relatives. ATF Agents who observed the driver believed at that time the driver was Delshawn WREN, but the man was not followed further and it was never confirmed definitively the person was WREN.

//

//

APR 1 9 2021

6. On April 16, 2021, I made arrangements with the individual to purchase three ounces of methamphetamine and two ounces of heroin. Through texts, he told me that he had the three ounces of methamphetamine ready for me, but would need to meet his "guy" with the money I would pay him for the methamphetamine, to get the heroin I wanted to purchase. I agreed to meet him later that day in the parking lot of the Clarion Suites Hotel, 1110 W. Eighth Avenue.

7. That evening I met the individual in the parking lot of the Clarion Hotel. He entered my vehicle and sold me three ounces of methamphetamine for $1,800. I paid him with pre-recorded ATF funds. He confirmed that his heroin source would meet him sometime soon, in the same parking lot, and he would then have heroin available so he could sell me the two ounces (approximately) we had agreed on.

8. I waited in my vehicle while he worked on his car and spent some time in his hotel room. He kept me updated with the status of his heroin source's arrival. Eventually he got back in my car, and told me his heroin source was going to arrive soon. I observed a Jeep Grand Cherokee bearing AK LP KEP458 (determined to be a rental vehicle) enter the parking lot and as it drove in the parking lot, the individual, who was looking at his phone, said to the effect, that was the guy he had been waiting for. He took an incoming call on speaker and I heard the voice on the line instruct him to get in the passenger side back seat "behind me". He exited my vehicle and then got in the back seat of the Jeep as

3:21-mj-00231-DMS 4 APR 1 9 2021

Case 3:21-mj-00231-DMS Document 1-1 Filed 04/19/21 Page 4 of 8

directed. The Jeep then drove by me and I observed the driver was a male, later identified as Stacy GODFREY.

9. I observed that the Jeep drove around the parking lot, out the exit, and parked on the street behind me. Shortly after that, the individual exited the Jeep, walked to my vehicle, and got back in. He produced two ounces of heroin that I observed was a very light brown color and had a powdery texture. He assured me that it was very high quality. I attempted to weigh the heroin, but my digital scale didn't work. He assured me the weight was correct and if we determined it wasn't, he would make it right, because he had also just obtained a large amount of heroin from his source. He removed a bag from his pocket and showed me a sandwich bag that appeared to contain at least 3-4 ounces of the same type of heroin. I then paid him $3400 in ATF pre-recorded funds, for the two ounces of heroin. He exited my vehicle, and I departed the area.

10. ATF Agents on surveillance observed that the individual went back to the Jeep, got in the vehicle, and a few moments later exited the vehicle. After the Jeep left the area DEA Agents assisted by APD attempted to follow it, but were unsuccessful.

11. Agents conducting surveillance on the individual observed that he walked to his parked car and got inside. Agents then contacted the individual and placed him under arrest. They seized the heroin I had observed earlier from his pocket.

12. I later tested the two substances I had purchased from him that day. I obtained a positive result for methamphetamine and a positive result for heroin for the respective packages of methamphetamine and heroin I had purchased from him.

13. After he was arrested, he was advised of his Miranda Rights. He waived his rights and agreed to speak with ATF Agent Rod Russell. He admitted engaging in distribution of controlled substances, and stated that his current source of supply for heroin, who had delivered heroin to him earlier that day, was a man he knew only as "Keek", later identified as Kyon WATSON. ATF Agent Sarah Foreman showed him a photograph of WATSON, and he confirmed that was the person who had sold him heroin earlier, and that in fact when ATF surveillance had observed him meet with WATSON earlier that evening, he had paid WATSON $6,000, and obtained more heroin from WATSON (some of which he then sold to me).

14. The individual stated that he owed WATSON approximately $1600 and was willing to order more heroin from WATSON, and tell WATSON he could pay him the money he owed him. He then participated in a series of phone calls and texts with WATSON, wherein WATSON agreed to return to the individual's location with another 8 ounces of heroin, to sell to the individual. These calls and texts were monitored and documented by Agents Russell and Foreman.

15. ATF Agents, assisted by DEA and APD, waited at the Clarion Hotel, where WATSON had agreed to meet the individual to sell him more heroin.

WATSON communicated to the individual that he and some friends would be arriving in the same Jeep as earlier, and WATSON wanted him ready to go with the money counted.

16. Agents observed the Jeep arrive, and when it parked, APD and ATF parked in a manner that the vehicle could not move. An APD Officer in a marked APD unit (with emergency lights activated) began to give orders to the occupants, but Kyon WATSON immediately exited the back passenger side door, and began running. WATSON was apprehended but right before he was, APD Officer Gaelan Graves observed WATSON run into a vehicle that was driving through the parking lot. When WATSON hit the vehicle, Officer Graves saw a large puff of powder or smoke and an object flying out of WATSON's hands when he hit the vehicle. Offer Graves and Officer Bakken confirmed that the object WATSON dropped was a sandwich bag that contained suspected heroin.

17. WATSON was arrested and Officers Graves and Bakken collected the heroin that he had dropped. Most of it was still contained in a zip lock style sandwich baggy and the officers collected the rest that had spilled on the ground and put it into an evidence bag. I took custody of the heroin and later weighed and field tested it. The substance weighed 154.5 grams including its original packaging and the APD packaging. I obtained a presumptive positive result for heroin from the field test. I also observed that the heroin seized from WATSON was the same color and consistency of the heroin I had purchased from the individual earlier that day.

APR 1 9 2021

3:21-mj-00231-DMS 7

Case 3:21-mj-00231-DMS   Document 1-1   Filed 04/19/21   Page 7 of 8

18. APD identified two other individuals that had been in the vehicle with WATSON; Jerome SANDERS, and Stacy GODFREY. I observed that GODFREY was the same person I had observed driving the vehicle earlier that day. I examined the Jeep they had all been in, and observed a cell phone in plain view, laying on the back seat floor near where WATSON had been sitting before he ran. I directed Agent Russell to have the individual call WATSON's cell phone, and to specifically use the number he had previously used to plan the purchase of heroin from WATSON. Immediately after I was told the call was ongoing, I saw that the phone in the back seat started ringing, and the number was from the individual's phone. I then seized that phone for evidence.

_____
Thomas J. King
**Special Agent**
**BUREAU OF ALCOHOL, TOBACCO**
**FIREARMS AND EXPLOSIVES**

SUBSCRIBED AND SWORN TO ~~before me~~ telephonically this __19__ day of April, 2021, at Anchorage, Alaska.

_____
Deborah M. Smith
**United States Magistrate Judge**